UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Tim Mackey and Daniel Shoemaker, as Trustees of the Minnesota Laborers Health and Welfare Fund; Tim Mackey and Daniel Shoemaker, as Trustees of the Minnesota Laborers Pension Fund; Tammy Braastad and Tim Mackey, as Trustees of the Minnesota Laborers Vacation Fund; Fred Chase and Joe Fowler, as Trustees of the Construction Laborers' Education, Training, and Apprenticeship Fund of Minnesota and North Dakota; Mark Ryan and Dave Borst, as Trustees of the Minnesota Laborers Employers Cooperation and Education Trust; The Minnesota Laborers Health and Welfare Fund; The Minnesota Laborers Pension Fund; The Minnesota Laborers Vacation Fund; The Construction Laborers' Education, Training, and Apprenticeship Fund of Minnesota and North Dakota; and The Minnesota Laborers Employers Cooperation and Education Trust, | File No. 19-cv-00103 (ECT/SER) |
| Plaintiffs, | |
| v. | **ORDER** |
| Precision Excavation Inc., | |
| Defendant. | |

Plaintiffs brought this case to collect unpaid fringe-benefit contributions, and now move for a default judgment and an injunction pursuant to Rules 54(b), 55(b)(2), and 65 of

the Federal Rules of Civil Procedure. ECF No. 9. A hearing on the motion was held on May 13, 2019. ECF No. 19. Christy E. Lawrie of McGrann Shea Carnival Straughn & Lamb, Chartered, appeared on behalf of the Plaintiffs. *Id.* There was no appearance on behalf of Defendant. *Id.*

I

1. Plaintiffs are Trustees of the Minnesota Laborers Health and Welfare Fund; the Minnesota Laborers Pension Fund; the Minnesota Laborers Vacation Fund; the Construction Laborers' Education, Training, and Apprenticeship Fund of Minnesota and North Dakota; the Minnesota Laborers Employers Cooperation and Education Trust, (collectively, "the Funds"). Compl. ¶ 1 [ECF No. 1].

2. The Funds are multi-employer jointly-trusteed fringe-benefit plans created and maintained pursuant to Section 302(c)(5) of the Labor Relations Management Act of 1974 ("LMRA"), as amended, 29 U.S.C. § 186(c)(5). *Id.* ¶ 2.

3. The Funds are administered in accordance with the provisions of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended 29 U.S.C. § 1001, *et seq*. *Id.* The Funds are exempt from federal income taxation pursuant to the Internal Revenue Code. *Id.*

4. The Funds filed the Complaint in this matter on January 14, 2019. *See id.* The Summons and Complaint were served upon defendant Precision Excavation Inc. on January 17, 2019. ECF No. 4.

5. Precision failed to file a responsive pleading.

6. The Clerk of Court entered default on February 11, 2019. ECF No. 8.

7. Precision is bound by the terms of a collective bargaining agreement between the Highway, Railroad and Heavy Construction Division of Associated General Contractors of Minnesota and the Laborers' District Council of Minnesota and North Dakota on behalf of its affiliated Local Unions ("CBA") covering the period of May 1, 2017 through April 30, 2020. Skoog Aff. Ex. B [ECF No. 12-1].

8. The CBA requires Precision to contribute every month, not later than the fifteenth day of the following month, sums to the Funds in an amount designated in the CBA for each hour worked by all employees covered by the CBA. *Id*. Ex. A, art. 22 [ECF No. 12-1].

9. The CBA requires Precision to accurately report all hours worked by each employee covered by the CBA and calculate the contributions due and owing to the Funds in any given month on a remittance report form which must be submitted with Precision's monthly payment to the Funds. *Id*. ¶ 4 [ECF No. 12]; *Id*. Ex. A, art. 22 ¶ 2(a).

10. The CBA states that Precision shall be considered "delinquent" for a particular month if its required report and payment for that month are not postmarked on or before the fifteenth day of the following month, irrespective of whether such delinquency is willful or otherwise. *Id*. Ex. A, art. 22 ¶ 5(a).

11. The CBA requires Precision to maintain adequate records to identify the type of work being performed by its employees to allow the Funds to determine whether Precision is accurately reporting hours to the Funds. *Id*. Ex. A, art. 22 ¶ 5(g).

12. The CBA further requires Precision to promptly furnish to the Trustees, or their authorized agents, on demand, a complete set of all relevant employment and payroll

records, including but not limited to federal forms W2s and W3s, federal quarterly 941 forms, federal forms 1099s and 1096s, Minnesota Unemployment Quarterly Reports (MUTAs or MN UCs) or such similar state required quarterly reports, time cards, payroll and check registers. This includes any other relevant information that may be required in connection with the administration of the Funds. *Id*.

13. The Funds' authorized agent requested that Precision produce a complete set of its payroll and employment records as specified in the CBA for the period of February 1, 2018 through the present ("Audit Period"). *Id*. ¶ 8.

14. Precision breached the terms of the CBA by failing to provide the requested payroll and employment records for the Audit Period. *Id*. ¶ 9.

15. The Funds reasonably believe that Precision employed individuals during the Audit Period for which contributions may be due and owing, and continue to do so. *Id*. ¶ 10.

16. Without the payroll and employment records requested, the Funds will have no means of verifying the proper amounts due and owing to them, nor will the Funds have adequate means of ascertaining the proper allocation of such contributions to Precision's employees pursuant to ERISA and the CBA. *Id*. ¶ 11.

17. The CBA provides that if Precision becomes delinquent by failing to submit its report and payment to the Funds on or before the fifteenth day of the following month for which they are due, Precision shall also pay, as liquidated damages and not as a penalty, an amount equal to ten percent of the payment otherwise due for such month. *Id*. Ex. A, art. 22 ¶ 5(b).

18. Liquidated damages for the Audit Period cannot be determined until the relevant payroll and employment records are produced. *Id.* ¶ 13.

19. The CBA states that if Precision becomes delinquent, Precision shall be required to pay interest on all delinquent fringe benefit contributions at the rate prescribed by the Trustees of the Funds. *Id.* Ex. A, art. 22 ¶ 5(c).

20. The Funds' Collection Policy further provides for the collection of interest at a rate equal to the actuarial assumed rate of return for the Minnesota Laborers Pension Fund plus 0.5 percent when an auditor determines a discrepancy of five percent or greater than the total contributions remitted by the employer in a twelve-month period. *Id.* ¶ 15.

21. The current actuarial assumed rate of return for the Minnesota Laborers Pension Fund is 7.5 percent. As such the Funds are entitled to interest on the unpaid contributions at a rate of eight percent annually. *Id.* ¶ 16.

22. Interest on the unpaid contributions cannot be determined for the Audit Period until the relevant payroll and employment records are produced. *Id.* ¶ 17.

23. The CBA states that if Precision fails or refuses to furnish its payroll records to the Trustees of the Funds or their authorized agents upon demand or refuses to afford the Trustees of the Funds or their authorized agents to examine the same in accordance with standard auditing procedures, the Trustees may enforce such rights by legal action, in which event all attorney fees, service fees, filing fees, court reporter fees and other legal costs and disbursements, as well as the auditing fees sand costs incurred in conducting such audit, shall be paid by Precision on direction by the Trustees. *Id.* Ex. A, art. 22 ¶ 5(g).

## II

24. Precision is in default and the Funds are entitled to entry of a default judgment. *See* Fed. R. Civ. P. 55(b)(2).

25. Precision will suffer no harm if ordered to submit its payroll and employment records for the Audit Period.

26. Awarding injunctive relief to enforce the Funds' right to the fringe-benefit reports will serve the public interest.

27. The Funds are entitled to injunctive relief.

28. The Funds are not required to provide security pursuant to Fed. R. Civ. P. 65(c) because no harm will befall Precision.

29. After Precision submits the payroll and employment records for the Audit Period, Precision is liable to the Funds for all fringe-benefit contributions and associated liquidated damages found to be due and owing in accordance with the law.

30. Precision is liable, in an amount to be determined, for the Funds' reasonable attorneys' fees and costs incurred in pursuing the delinquent contributions.

31. Because the Funds' right to the payroll and employment records for the Audit Period is separate and independent from their right to collect contributions, and because an injunction enforcing the Funds' right to the employment and payroll records is a necessary first step in determining the amount of contributions due and owing, there is no just reason for delaying entry of judgment on the requested injunction. The Court will therefore order an entry of judgment as to the Funds' request for injunctive relief under Fed. R. Civ. P. 54(b).

## ORDER

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiffs' Motion for Default Judgment and Injunction [ECF No. 9] is **GRANTED**;

2. Defendant is **ORDERED** to submit its remittance reports, and payroll and employment records for the period of February 1, 2018 to the present. Defendant must submit the reports and records to Plaintiffs' third-party administrator, Zenith Administrators, 2520 Pilot Knob Road, Suite 325, Mendota Heights, MN 55120-1396 within ten (10) days of the date on which it is served with a copy of this Order;

3. There being no just reason for delay, the Court orders entry of judgment on the foregoing injunction pursuant to Fed. R. Civ. P. 54(b);

4. The Court further **DECLARES** that Defendant is liable to Plaintiffs, pursuant to the CBA, for:

   a. Any delinquent contributions and liquidated damages found due and owing for the period of February 1, 2018 to the present in accordance with the law; and

   b. Plaintiffs' reasonable attorneys' fees and costs incurred in pursuing delinquent contributions;

5. The Court will determine the amount of contributions, liquidated damages, interest, attorneys' fees and costs as follows:

a. After receiving the remittance reports, and payroll and employment records, the Plaintiffs may file and serve a Motion for Entry of Money Judgment in the amount Plaintiffs determine that Defendant owes for delinquent contributions and liquidated damages, as well as reasonable attorneys' fees and costs;

b. Defendant may then file and serve a response to the Plaintiffs' motion within ten (10) days of the date on which it is served with a copy of Plaintiff's motion;

c. The Court will examine the Parties' submissions and issue an order for judgment as the Court deems appropriate. No hearing will be held unless the Court orders otherwise.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: May 13, 2019
s/ Eric C. Tostrud
Eric C. Tostrud
United States District Court